### FULTON v. JACKSON et al.   (No. 1334.)

(Court of Civil Appeals of Texas.   El Paso. Oct. 19, 1922.)

Mines and minerals &⟶54(2)—Grantee of land and one-eighth of minerals held entitled to same share in royalty under subsequent lease, and not in all oil produced.

Where a landowner sold the land and ⅛ of the minerals, and by agreement between the parties the original owner leased the mineral rights, the lessee agreeing to pay a certain bonus and a royalty of one-eighth of the oil produced, the grantee and his subsequent grantees, who purchased lots on subdivision of the land, were entitled to one-eighth of the one-eighth royalty, and not one-eighth of all the oil produced on the land.

Error from District Court, Stephens County; W. R. Ely, Judge.

Action by W. P. Fulton against W. C. Jackson and others. There was a judgment for defendants on a directed verdict, and plaintiff brings error. Affirmed.

V. L. Shurtleff, of Breckenridge, for plaintiff in error.

W. C. Jackson, of Abilene, for defendants in error. ·

WALTHALL, J.   W. P. Fulton brought this suit against B. S. Walker, C. M. Caldwell, W. C. Jackson, G. A. Beeman, H. M. Stevenson, the Virginia Company, a corporation, and the Sinclair Pipe Line Company, a corporation, to have a certain contract pertaining to the conveyance of an interest in the oil in the land in question construed, for specific performance of the contract and recovery for the interest found to be due.

We think a statement of some of the undisputed facts found in the record and occurring prior to the execution of the contract made the basis of the cause of action will serve to explain some of the matters stated in the contract.

On the 7th day of June, 1919, B. S. Walker and wife owned the 54 acres of land out of which this controversy arose. They owned the surface and all the minerals contained therein. On the day above mentioned B. S. Walker entered into an agreement with J. H. Bryan, W. D. Mayfield, and J. A. Wilson, by the terms of which Walker sold to Bryan, Mayfield, and Wilson for the consideration stated certain lands described by metes and bounds, and, as we understand the record, embracing the said 54 acres of land involved in this suit, and excepting out of the land described certain portions, not necessary to state. Walker reserved to himself ⅞ interest in all the mineral in, on, and under the land conveyed and conveys all the surface and ⅛ of all the mineral interest in the land conveyed, with certain portions of the land excepted. In the conveyance it was agreed that Walker "will only drill for oil and gas on said tract above described in four places later on to be agreed upon." By the terms of the instrument Bryan, Mayfield, and Wilson agreed to have said land surveyed, mapped, and platted into city lots, and place same upon the market for sale, Walker to execute deeds to lot purchasers as sales were made, the money paid on lot sales to be applied on the notes given to Bryan, Mayfield, and Wilson to Walker as the purchase price for the land.

While not stated in the body of the contract it was testified to by Walker, and not contradicted, that the above conveyance was made with the understanding that all the land conveyed could be operated for oil and gas, and that the parties should find somebody to operate it. Walker was to reserve title to the mineral and get a lease on it, with somebody that would be satisfactory to both lessor and lessees. Later, it seems from the evidence, that Beeman, Stevenson, and Jackson, with the consent of Walker, took up the Bryan, Mayfield, and Wilson agreement, and assumed their obligations under their agreement with Walker, except, as testified to by Walker, and not denied; the feature of the Walker-Bryan et al. contract reading:

"It is further agreed that the party of the first part [Walker] will only drill for oil and gas on said tract above described in four places later on to be agreed upon and designated by the parties to this contract,"

—was not carried out in the transaction with Beeman, Stevenson, and Jackson. There seems to have been no written contract between Walker and Beeman, Stevenson and Jackson, or at least none is stated or found in the record. The latter just assumed to carry out the Bryan, Mayfield, and Wilson contract.

In order to avoid the necessity of each lot purchaser signing a drilling contract, and

---

that one could act for all (as we understand from the record) a lease contract was entered into by Walker, as lessor, with C. M. Caldwell as lessee. The date of that lease is August 4, 1919. It is in the usual form of lease contract 88. It purports to grant, demise, lease, and let for the sole purpose of mining and operating for oil and gas, laying pipe lines, etc., 54 acres described by metes and bounds, and known as Lake View addition to the city of Breckenridge. Certain parts and parcels of land described are excepted out of the lease. .The lease term is five years, and as long as oil or gas is produced from the land by the lessee. The lessee covenants "to deliver to the credit of the lessor free of cost, in the pipe line to which he may connect his wells, the equal one-eighth part of all oil produced and saved from the leased premises." The other covenants and agreements are not material to the issues here involved. The contract upon which this suit is based reads as follows:

"The State of Texas, County of Stephens.

"Know all men by these presents: That whereas, on this day B. S. Walker has conveyed to W. P. Fulton lot No. 66 in block No. 52, of Lake View addition.to the city of Breckenridge, Texas, on consideration of $750.00, of which amount a note is given in the sum of $375.00 due six months from this date; and, whereas, C. M. Caldwell did on the 2d day of October, 1919, enter into an agreement concerning certain mineral rights in Lake View addition to the city of Breckenridge, Texas, a copy of which is attached hereto and made a part hereof:

"Now, therefore, I, W. C. Jackson, by the authority and in conformity with the above-described agreement, and on account of the execution of the above-described deed, do hereby designate W. P. Fulton as holder of an interest in the trust fund described in said Caldwell agreement and do set apart and allot to said W. P. Fulton one share, being $1/204$ interest of one-eighth of all mineral under said Lake View addition, except [designating certain lots], and said bank is hereby authorized and directed to pay the said W. P. Fulton, his heirs and assigns, $1/204$ interest in said trust fund, but it is expressly understood and agreed that all moneys that may become due and payable under this agreement shall be paid and credited on the above-described note until said note is fully paid. This assignment shall be held and kept by said First National·Bank as its authority to pay the portion of said trust fund herein assigned as herein directed.

"[Signed]   W. C. Jackson, Trustee. "This 30th day of October, 1920."

The First National Bank of Breckenridge accepted the trust as indicated in the above Jackson-Fulton receipt or contract, and agreed "to pay any trust fund that may be deposited with us under said agreement to such parties and in such proportions as may be designated by W. C. Jackson, trustee, the designation and order by him being filed with us for our guidance and as our authority for paying out said funds."

Without stating the pleading of Fulton more fully, it is his contention that under and by reason of said contracts and receipts he is entitled to receive an interest amounting to $1/204$ of $\frac{1}{8}$ in all minerals produced from said 204 lots; that the $\frac{1}{8}$ of the oil mentioned was to bear no part of the operating expenses in oil production, but was that part of the oil produced and delivered to him as owner of his one lot and as part consideration for the lease on said land. Fulton alleges the value of his said interest to be $1,000; that the Virginia Company has mineral lease on said property, and by its terms agrees to pay $\frac{1}{8}$ of the oil produced as royalty; that oil has been produced on said property and is being sold and delivered to the Sinclair Pipe Line Company operating a pipe line connected with the wells on said lots.

The two corporations filed no answers. The other defendants in error filed separate answers, each alleging the several parts they occupied in the execution of the several contracts, but each practically making one contention. They pleaded the same contracts as do Fulton, and set out the facts in connection with the execution of said several contracts, and submit that, in the agreement with Fulton it was understood that all minerals would be reserved on the lot conveyed in the deed to him, but that in lieu thereof defendant Jackson, as trustee, would issue a certificate or agreement which would authorize the First National Bank of Breckenridge to pay $1/204$ of a certain trust fund that had been agreed on between Jackson and Caldwell and Walker and the said bank, as outlined in the said several instruments set out above; that in all negotiations with Fulton it was understood and agreed that there was no contract on said Lake View addition to drill a well or wells, but that Caldwell held a mineral lease on said addition, and was authorized to and would for the interest of all parties enter into a drilling contract; that on or about January 27, 1921, Fulton accepted said deed for the consideration stated, and at the same time there was delivered to him the lease contract from Walker and wife to Caldwell, of date October 2, 1919, and the instrument executed by Caldwell on the 2d day of October, 1919, reciting the execution and delivery to him of the said lessee contract by Walker and wife to him, and that he, Caldwell, was holding $\frac{1}{8}$ of the oil and gas under the portion of said addition then being handled by Beeman, Stevenson, and Jackson, for Jackson, trustee, and that he, Caldwell, would deliver to said bank to be apportioned by Jackson, trustee, $\frac{1}{8}$ of the bonus or rentals that he, Caldwell, may receive on account of any leases or contracts on said addition, and $\frac{1}{8}$ of any royalty received on wells drilled on said addition, to

be paid to such parties and in the proportion designated by Jackson, trustee.

It is alleged that in 1920 Caldwell contracted with the Virginia Company to drill the addition and develop same for oil, said company agreeing to pay a bonus of $100,000 out of $7/16$ of the oil produced and saved, and $1/8$ of all oil produced as royalty; that under said contract and agreement as above Fulton was to receive $1/204$ of $1/8$ of the $100,000, and $1/204$ of $1/64$ of the oils produced, that Fulton has received, so far, his proportion of said bonus and royalties, and will continue to receive same, as same is paid.

The case was tried with a jury. After the evidence was heard the court instructed a verdict for the defendants.

Only one proposition is presented, namely:

"Under the contract entered into between plaintiff (Fulton) and defendants (all defendants named) the plaintiff was entitled to $1/204$ of $1/8$ of the oil and gas produced from said Lake View addition."

Under the statement under the proposition appellant quotes only the certificate or contract of W. C. Jackson, trustee, set out above, and further says that the evidence showed that defendants had not paid plaintiff $1/204$ of $1/8$ of all the oil and gas received from the addition, but had paid him only $1/204$ of $1/64$ of all the oil and gas produced from the addition, and refers to a page of the statement of facts.

Appellees made three contentions in their brief: (1) The $1/8$ of the oil production to be distributed and paid to the lot purchasers would necessarily have to bear its proportional part of the cost of bringing the oil to the surface; (2) the contract sued on (the Jackson certificate or contract), construed together with the Caldwell agreement, states that plaintiff was to share in $1/8$ of any bonus, and $1/8$ of all royalty received, and it is not disputed that he did not do this; (3) the case should be affirmed because no error of the trial court has been pointed out.

It is quite clear to us that all of the contracts, receipts, and certificates shown in the record as constituting the terms upon which Fulton made his purchase of the lot in the addition should be construed together. The Sinclair Company paid $100,000 for its interest in producing the oil wells. That payment is treated by all parties as the bonus, and the only bonus to be distributed to lot purchasers. One-eighth of that amount, $12,500, was distributed to the 204 lots, giving each $61.57. That amount was paid to Fulton. The only confusion in construing the contracts seems to be on the distribution of the amount received on the oil production.

On the contract of October 2, 1919, Caldwell acknowledged that he held $1/8$ of the oil and gas royalties, and would deliver the same to the bank to be distributed and paid by the bank as Jackson, trustee, would des-ignate the parties and in the proportion designated by him. The bank would not know who would be entitled to receive a portion of the trust fund, nor the amount until the party and the amount would be indicated or designated to the bank by Jackson, trustee. Jackson's power over the trust fund in the bank is not an arbitrary power, but his duty and power as trustee depends upon the nature and terms of the instruments by which the trust is created.

Without restating them in detail, all of the instruments indicate that each lot owner in the addition is entitled to share in the trust fund in proportion to the number of lots owned by him; that is, each lot is entitled to one share. The oil production on the addition is distributed equally to the 204 lot owners. Jackson, trustee, by his instrument of October 30, 1920, designated Fulton as the holder of an interest in the trust fund described in the Caldwell agreement of October 2, 1919, and allotted to Fulton one share, stated to be $1/204$ interest of $1/8$ of all mineral under the addition, except as to certain lots stated, and directed the bank in which the proceeds from the sale of the oil production had been placed to pay to Fulton $1/204$ interest or part of said trust fund. The above indicates only the interest, part or portion, that Fulton is entitled to receive of whatever trust fund Caldwell places in the bank, but does not indicate the amount of money or the trust fund that is in the bank, or has been deposited in the bank to the credit of the trust fund.

Fulton alleges that his interest in the oil production is of the value of $1,000. It is not alleged that the $1,000 or any other amount, has been deposited in the bank. He does not allege, nor does the record disclose, what part of the $1,000 he has received, if any; nor does he allege that he has not received any part of the trust fund, in money or in the mineral production. There is no suggestion in the petition, nor in the evidence that the Sinclair Pipe Line Company has not delivered to the parties entitled to receive it all of the oil production due the said trust fund, or have not paid its value into the bank. We think the contracts shown above indicate that, whatever interest Fulton has in the trust fund, he is to receive same in money through the depository bank, and not in oil production from the pipe line.

It is not our purpose to criticize or even suggest what might be a want of certainty in the facts in stating the cause of action, as no such question is presented, but specific performance of the contract sued on is prayed for as to all defendants. The several contracts shown in the evidence, we think, sufficiently disclose the interest Fulton and each of the defendants have in the subject-matter of the suit, and the several parts each has performed and was to perform in the purpose of developing the mineral in the ad-

dition, but we fail to find in the pleading or in the evidence just what any of the defendants should have done under the contracts, and have not done.

Fulton claims that he is entitled to receive from Jackson $1/204$ of $1/8$ of the oil produced. But Jackson does not receive $1/8$ of the oil produced. He receives $1/8$ of $1/8$, and that is the trust fund in the bank referred to in the certificate upon which Fulton's suit is based. Fulton is therefore entitled to receive $1/204$ of $1/8$ of $1/8$, or $1/204$ of $1/64$ of the trust fund in the bank.

The statement in the certificate to Fulton that he was the owner of $1/204$ of $1/8$ of all minerals under the addition is a separate matter from his interest in the trust fund in the bank. If Jackson authorized Caldwell to grant to the Virginia Company the other $7/8$ of the $1/8$ in the minerals owned by Jackson, and that grant was in violation of Fulton's rights under his certificate, that is another matter, and is not raised by this suit.

For the reason stated, we have concluded that the court was not in error in instructing a verdict for all of the defendants.

The judgment is affirmed.